Martin *v.* State.

Opinion delivered September 28, 1914.

1. Criminal law—impersonating an officer—To constitute the offense of impersonating an officer under Kirby's Digest, § 1964, it is not sufficient that one falsely asserts that he is an officer, and has the authority to act as such, nor is it sufficient that he declares his intention to act as such; but to constitute this offense, it is essential that he assumes or exercises, or attempts to exercise some of the functions, powers, duties or privileges incident or belonging to the office which he asserts he holds at the time.

2. Criminal law—impersonating an officer.—The false statement by defendant that he had a warrant and intended arresting one M., made for the purpose of wrongfully extorting payment of a sum of money from M., when defendant did not arrest, nor undertake to arrest, M., does not constitute the assumption of the functions of an officer, or an attempt to exercise the privileges, powers, or duties incident or belonging to an officer.

Appeal from Greene Circuit Court; *W. J. Driver,* Judge; reversed.

## STATEMENT BY THE COURT.

Appellant was indicted for the crime of impersonating an officer, and upon his trial was convicted and given a sentence of two years in the penitentiary.

The proof on the part of the State was made by the prosecuting witness, Os Martin, Ben Fears, with whom the prosecuting witness was boarding, and Lela Mann, a sister of the prosecuting witness. Fears testified that he went with appellant to the field where Martin was plowing, and that appellant told Martin he had a warrant for him, and was going to arrest him. Upon being asked about his warrant, appellant stated that he had a warrant issued against Martin because Martin had told appellant a lie in a trade for a horse, by reason of which appellant had been induced to trade for a horse upon which there was a mortgage, and which he had subsequently lost on account of this mortgage. Appellant told Martin that he had consulted an attorney, and had been advised that he could arrest Martin or let him go without arresting him, and he stated to Martin that if he would confess that he had lied to him, and would pay him $5, that he would not make the arrest. That appellant stated that he had gotten $5 from one Jim Warvell, a boy who was with appellant at the time the horse trade was made, and the $5 which he claimed to have so received was exhibited at the time. That Martin, who was spoken of by the witnesses as being a boy, had no interest in either of the horses which were traded, but appellant insisted that Martin had stated that the owner of the mortgaged horse had a right to trade it, and although Martin at first denied having made this statement, he subsequently admitted that he had done so. This admission, however, was only made after appellant had manifested great anger, and had threatened to assault Martin. Fears further testified that when appellant first began to talk, he acted like an officer, and wound up acting like a man who wanted to fight.

Martin testified that appellant claimed that he (Martin) had told him a lie and caused him to get cheated out

of his horse, and that he had a warrant for him, but would let him go if he would pay $5, and he admitted having told a lie, but said he did so in order to avoid a personal difficulty with appellant.

Lela Mann testified that she met appellant as he was going down to see her brother, and that he told her he was going to get her brother, and would bring him back within a short time, but that he would let Martin out of his trouble, if he would pay him $5, as the Warvell boy had done.

No witness testified that appellant claimed to be an officer, nor was there any evidence that he actually undertook to arrest Martin. On the contrary, he merely stated that he had a warrant for Martin's arrest, and was going to arrest him. During all of this conversation in the field, Martin stood between his plow handles, leaning against his plow.

Martin further testified that when appellant first came up to him, he thought he was joking, but when he saw that he was very angry, he decided appellant wanted to fight, and he admitted having lied to avoid being whipped, as appellant was much larger than he was, but that appellant did not arrest him, and did not try to arrest him, and that he did not think appellant was going to arrest him, but thought he was going to fight him.

We do not set out the evidence offered on behalf of appellant, but it was to the effect that he had only attempted to collect $5 as damages upon account of the fraud perpetrated upon him.

Among other instructions, the court gave the following:

"In this case, defendant, Bev Martin, is charged with the crime of impersonating an officer. (Reads indictment.) The statute under which this charge is preferred reads that, 'No person shall assume to exercise, or attempt to exercise, any of the functions, powers, duties or privileges incident or belonging to the position or office of special deputy sheriff, special constable, special deputy marshal, and policeman, or other peace officer, without

having been legally and duly appointed as such, or has been summoned by some peace officer as provided by law.' ''

*T. W. Campbell,* for appellant.

The evidence does not sustain a verdict of conviction under the statute upon which this prosecution is based. Taking all of the testimony on the part of the State as true, no case of impersonating an officer is made out within the meaning of the statute. Kirby's Dig., § 1965.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

We think the proof brings this case within the law declared in section 1964, Kirby's Digest.

SMITH, J., (after stating the facts). The instruction set out above is substantially the language of section 1964, of Kirby's Digest, under which section this prosecution was had.

Other instructions applying the section above quoted to the facts of this case were given, to which exceptions were duly saved, but we find it unnecessary to set them out.

It appears from the evidence, which we have set out, that the jury might have found the facts to be that appellant claimed to have a warrant authorizing him to arrest Martin, and that appellant announced his intention of doing so. But there was attached to the announcement of his purpose to make the arrest the condition that he would not do so if Martin would pay $5 as damages, and it appears that appellant's purpose was either to collect this $5, or to whip Martin in the event he failed to pay. He may have been deterred from the accomplishment of either of these reprehensible purposes by the presence of Fears and his interposition in the discussion. But there is no evidence that appellant ever actually undertook to arrest Martin.

''An arrest is made by placing the person of the defendant in restraint or by his submitting to the custody of the person making the arrest.'' Section 2122, Kirby's Digest.

The person of Martin was not placed in restraint, nor did he submit himself to the custody of appellant, but, upon the contrary, Martin testifies that he did not think appellant meant to arrest him.

(1-2) To constitute the offense of impersonating an officer under the section above quoted, it is not sufficient that one falsely asserts that he is an officer, and has the authority to act as such, nor is it sufficient that he declares his intention to act as such; but to constitute this offense, it is essential that he assumes or exercises, or attempts to exercise, some of the functions, powers, duties, or privileges incident or belonging to the office which he asserts he holds at the time. Appellant did not arrest Martin, nor did he undertake to do so. He merely stated that he had a warrant and falsely declared his purpose of making an arrest. But such false statements, even though made for the purpose of wrongfully extorting payment of a sum of money, did not constitute the assumption of the functions of an officer or the attempt to exercise the privileges, powers, or duties incident or belonging to an officer.

We are not called upon to decide what, if any, violation of the law appellant committed by his conduct, as it is sufficient, for the purposes of this case, to say that the proof is insufficient to sustain a conviction under the section above quoted, and the judgment of the court below is, therefore, reversed and the cause remanded for a new trial. *France* v. *State,* 68 Ark. 529; *Reed* v. *State,* 97 Ark. 156; *Jones* v. *State,* 85 Ark. 360.